O

# United States District Court
# Central District of California

| | |
|---|---|
| MORRIS REESE,<br><br>                  Plaintiff,<br><br>       v.<br><br>SPRINT NEXTEL CORPORATION,<br>                  Defendant. | Case No. 2:13-cv-03811-ODW(PLAx)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [53]** |

## I.    INTRODUCTION

Plaintiff Morris Reese notified virtually the entire cellular wireless industry of U.S. Patent No. 6,868,150 ("the '150 Patent") in 2005 through letters alleging that providing call-waiting and caller-ID services infringed the '150 Patent. But it was not until May 2013—more than eight years later—that Reese filed patent-infringement suits against the five cellular service providers. Finding this delay unfair, the service providers, including Defendant Sprint Nextel Corporation, all individually filed motions for summary judgment against Reese based on the defense of laches. Faced with dismissal of his current suits because of his prolonged delay, Reese now offers excuses—such as his illness and involvement in other litigation—to justify his delay in bringing suit. Because none of Reese's explanations excuse his delay, the Court **GRANTS** Sprint's Motion for Summary Judgment. (ECF No. 53.)

## II.    FACTUAL BACKGROUND

Reese is the sole named inventor on the '150 Patent, which issued on March 15, 2005.  (SUF ¶ 2; Ex. A.)  The '150 Patent is a continuation of the '009 Patent which issued July 30, 2002.  (Mot. Ex. C.)  The '150 Patent expired in 2011, two years prior to Reese's suit against Sprint. (SUF ¶ 5.)

On April 13, 2005, Reese sent a letter to the CEOs of Sprint Corporation and Nextel Communications, Inc. asserting that they infringed the '150 Patent with their call-waiting ID service.  (SUF ¶ 1; Mot. Exs. A, B.)  The April 13, 2005 letter informed Sprint of the '150 Patent, and directed Sprint in particular to claims 25 and 36—which Reese indicated were "applicable to [Sprint] customers subscribed to 'Call Waiting ID' service.'"  (*Id.*)  Reese asserted that for Sprint to continue to provide that service to its customers, Sprint required a license from Reese.  (*Id.*)  Reese did not inform Sprint that it would be sued if it did not take a license.  (*Id.*)

Sprint was one of twelve different telecommunications companies who received infringement notices from Reese in 2005—BellSouth, Cingular Wireless, Motorola, Nextel, Nokia, Qwest Communications, Samsung, SBC Communications, Verizon, and T-Mobile also received letters.  (Reese Decl. ¶¶ 3–5, 8–10, 14.)  Between 2005 and 2013, Reese litigated several other patent-infringement lawsuits across the country.[1]  (*Id.* ¶ 17–18.)  Four of these suits involved the '150 Patent or its immediate parent patent.  (*Id.* ¶¶ 12–13.)  Reese was represented by counsel for all of these suits, with the exception of *Reese v. Verizon Cal., Inc. et al.*, Case No. CV-11-01934 SJO (C.D. Cal. Aug. 11, 2011), which he litigated pro se.  (Reese Decl. ¶ 33.)

---

[1] *Reese v. BellSouth Telecommunications*, No. 5:97-cv-00568-BO (E.D.N.C Nov. 14, 1997); *Reese v. U.S. West Inc.*, No. 98-cv-80575-CRW (S.D. Iowa Mar. 12, 1999) (transferred to *Reese v. U.S. West Inc.*, No. 1:99-cv-00773-WDM-MJW (D. Col. Sept. 23, 2002)); *N. Telecom, Inc. v. Reese*, No. 2:98-cv- 09591-LGB (C.D. Cal. Feb. 9, 1999) (transferred to *N. Telecom, Inc. v. Reese*, No. 4:99-cv-80081-CRW (S.D. Iowa Mar. 10, 1999)); *Reese v. Aastra Technologies*, No. 2:03-cv-00267-TJW (E.D. Tex. Feb. 9, 2005); *Reese v. Samsung Telecommunications America, L.P.*, No. 2:05-cv- 00415-DF (E.D. Tex. Jan. 31, 2007); *Reese v. Southwestern Bell Telephone, L.P., et. al.*, Case No. 2:07-CV-219 (E.D. Tex. Dec. 23, 2008); and *Reese v. Verizon California, Inc. and AT&T California*, Case No. CV-11-01934 SJO (C.D. Cal. Dec. 21, 2012).

1      From 2000 to 2008, Reese experienced serious heath problems.  Reese began

2 dialysis treatments for renal failure in 2000.  (*Id.* ¶ 29.)  Reese's dialysis treatments

3 were performed three times per week until Reese had a kidney transplant in 2008.  (*Id.*

4 ¶¶ 30–32.)

5      On May 29, 2013, Reese filed suit against Sprint—along with Verizon.,

6 TracFone Wireless, Inc., United States Cellular Corporation, AT&T Mobility LLC,

7 and T-Mobile USA, Inc.  (*Morris Reese v. Sprint Nextel Corporation et al.*, 2:13-cv-

8 03811-ODW-PLA (C.D. Cal. May 29, 2013) ECF No. 1.)  The Court severed the case

9 on July 15, 2013.  (*Id.* ECF No. 18.)

### III.    LEGAL STANDARD

11      Summary judgment should be granted if there are no genuine issues of material

12 fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

13 56(c).  The moving party bears the initial burden of establishing the absence of a

14 genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

15 Once the moving party has met its burden, the nonmoving party must go beyond the

16 pleadings and identify specific facts through admissible evidence that show a genuine

17 issue for trial.  *Id.*; Fed. R. Civ. P. 56(c).  Conclusory or speculative testimony in

18 affidavits and moving papers is insufficient to raise genuine issues of fact and defeat

19 summary judgment.  *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.

20 1979).

21      A genuine issue of material fact must be more than a scintilla of evidence, or

22 evidence that is merely colorable or not significantly probative.  *Addisu v. Fred Meyer*,

23 198 F.3d 1130, 1134 (9th Cir. 2000).  A disputed fact is "material" where the

24 resolution of that fact might affect the outcome of the suit under the governing law.

25 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).  An issue is "genuine" if

26 the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving

27 party.  *Id.*  Where the moving and nonmoving parties' versions of events differ, courts

28 / / /

1    are required to view the facts and draw reasonable inferences in the light most
2    favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### IV.    DISCUSSION

4         In the interest of fairness, those who are granted a monopoly under the patent
5    system have an obligation to enforce their rights in a timely manner.  A defendant in a
6    patent-infringement suit may raise the equitable defense of laches when the plaintiff is
7    dilatory bringing suit and that delay prejudices the defendant.  *A.C. Aukerman Co. v.*
8    *R.L. Chaides Const. Co.*, 960 F.2d 1020, 1030 (Fed. Cir. 1992).  In patent cases, laches
9    bars recovery of damages for any infringement that occurs prior to the filing of suit.
10   *Id.* at 1040.  A laches defense is a matter within the trial court's discretion based on
11   consideration of all of the facts in a particular case. *Id.* at 1040–41.

12        To prevail on a laches defense, a defendant must prove by a preponderance of
13   the evidence that: (1) the plaintiff knew or should have known of the infringement and
14   with that knowledge delayed filing suit for an unreasonable and inexcusable length of
15   time, and (2) the defendant was materially prejudiced by the delay.  *Id.* at 1032; *see*
16   *also Hearing Components, Inc. v. Shure, Inc.*, 600 F.3d 1357, 1375 (Fed. Cir. 2010).
17   Where the delay in filing the suit exceeds six years, the court will presume the delay
18   was unreasonable and prejudicial to the defendant.  35 U.S.C. § 286; *Hearing*, 600
19   F.3d at 1375 (citing *Aukerman*, 960 F.2d at 1035–36.)  The burden is then on the
20   plaintiff to prove the existence and reasonableness of an excuse for the delay, and to
21   show a lack of prejudice to the infringer.  *Hearing*, 600 F.3d at 1375.

22        Determining the length of the delay involves two sub-issues: when the delay
23   period begins to run and when the delay period ends.  The delay period begins to run
24   from the time that the plaintiff had actual or constructive knowledge of the alleged
25   infringing activities.  *Aukerman*, 960 F.2d at 1032;  *Hearing Components*, 600 F.3d at
26   1375.  But the plaintiff need not be certain that the conduct is infringing; time starts to
27   run when the patentee is aware of sufficient facts to form a reasonable belief that some
28   / / /

4

1    infringing conduct exists.  *Aukerman,* 960 F.2d at 1032.  The delay period ends no

2    later than the date of the filing of suit.  (*Id.*)

3         The reasonableness of the delay is not determined by application of mechanical

4    rules.  *Aukerman*, 960 F.2d at 1032.  Rather, the reasonableness of the delay depends

5    on the particular facts and circumstances of the individual case.  *Id.*  The court must

6    consider and weigh any justification offered by the plaintiff for its delay.  *Id.* at 1033.

7         Prejudice to the defendant may be either economic or evidentiary.  *Id.*

8    Economic prejudice arises when a defendant incurs damages that would likely have

9    been prevented by earlier suit.  *See id.*  Economic prejudice is not merely damages

10   attributable to patent infringement liability.  *Id.* at 1033.  Evidentiary or "defense"

11   prejudice arises when the defendant can no longer present a full and fair defense on

12   the merits due to the plaintiff's delay.  *Id.* at 1032.  This inability may be occasioned

13   by "the loss of records, the death of a witness, [or] the unreliability of memories of

14   long past events."  *Id.*

15        Sprint asserts that it is entitled to a laches presumption because of Reese's eight

16   -year delay in filing suit.  Reese contends that Sprint is not entitled to a laches

17   presumption because there is no evidence that the delay period, for laches purposes,

18   began to run in 2005.  In the alternative, Reese argues that he can rebut the laches

19   presumption because his delay was reasonable and resulted in no prejudice to Sprint.

20   The Court considers each in turn.

21   **A. Laches Presumption**

22        Sprint asserts that it is entitled to a presumption that Reese's delay in filing suit

23   was unreasonable and prejudicial to Sprint.  In support of this assertion, Sprint argues

24   that Reese knew or should have known of Sprint's alleged infringement as of April 13,

25   2005, when Reese sent the infringement-allegation letter to Sprint.  Reese then failed

26   to formally assert his infringement claims against Sprint until 2013.  Sprint asserts that

27   because this amounts to a more than eight-year delay, it is entitled to the laches

28   presumption under § 286.

1    Reese argues that the delay period did not begin to run on April 13, 2005
2  because his letter to Sprint was not an infringement allegation, but merely an
3  invitation for Sprint to open licensing discussions with Reese.  Thus, Reese contends,
4  there is no evidence that Reese actually knew of Sprint infringement in 2005.  This
5  argument is contrary to the plain text of the letter.  Reese states in his letter to Sprint
6  that in order for it to continue to provide call-waiting-ID services, Sprint "requires a
7  license from Mr. Reese."  (Mot. Ex. D.)  It strains credibility to argue that a patent
8  owner who demands that a company take a license can somehow not know of his
9  infringement claim on that patent.

10    Moreover, Federal Circuit precedent establishes that knowledge as to whether
11  the device *actually* infringes is not required to establish laches.  A good-faith belief is
12  sufficient.  *Aukerman,* 960 F.2d at 1032.  Reese clearly believed that Sprint's call-
13  waiting-ID services infringed the '150 Patent—evidenced by his attempt to open
14  licensing negotiations in 2005.  Accordingly, the Court finds that Reese had actual
15  knowledge of Sprint's infringement at least on April 13, 2005.  Because Reese failed
16  to formally assert his rights until 2013, Sprint is entitled to a presumption of laches.
17  Thus, Reese "must come forward with evidence sufficient to put the existence of these
18  presumed undisputed facts into genuine dispute, either by showing that the delay was
19  reasonable or that the movant did not suffer prejudice caused by the wait."  *Id.*
20  at 1038.

21    **B. Reasonableness of the delay**

22    Reese argues that even if he had knowledge of Sprint's infringement in 2005,
23  his eight-year delay in filing suit was reasonable.  Reese proffers two justifications for
24  his delay: his involvement in other litigation and his worsening medical condition.
25  Reese also claims he is entitled to leniency because he was representing himself for
26  some of the litigation.  The Court addresses each in turn.

27    First, Reese argues that his eight-year delay in filing suit against Sprint was
28  reasonable because he was extensively involved in other litigation.  On August 31,

2005, Reese filed suit against cellular phone manufacturers Samsung, Motorola, Sony, Siemens, LG, RiM and Palm, alleging infringement of the '009 Patent (the immediate patent of the '150 Patent).  (Reese Decl. ¶ 17.)  That suit continued through January 31, 2007.  (*Id.* ¶ 18.)  Four months later, Reese sued land-line telephone service providers Southwestern Bell Telephone Company, GTE Southwest, and their parent companies AT&T and Verizon, for infringement of the '150 Patent.  (*Id.* ¶ 21.)  Reese voluntarily dismissed AT&T and Verizon from that action, but later brought a separate suit against the same companies that lasted from March 2011 to December 21, 2012.  (*Id.* ¶¶ 24, 33.)  Approximately five months later, Reese filed this action against the Sprint, again alleging infringement of the '150 Patent.

Involvement in other enforcement litigation may, in some circumstances, excuse a plaintiff's delay in suing an alleged infringer.  But the Federal Circuit has held that a plaintiff's calculated choice to proceed with certain lawsuits while delaying others—absent other factors—is a strategic decision that does not excuse or otherwise toll the presumption period for laches.  *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996).

In *Hall*, the Federal Circuit noted that delay occasioned by involvement in other enforcement litigation *may* be reasonable if the alleged infringer has knowledge of (1) the existence of the other litigation, and (2) the plaintiff's intent to enforce its rights against the infringer at the conclusion of the other litigation.  Although there is no rigid requirement that such notice be given, "[w]here there is prior contact [between the patentee and the accused infringer], the overall equities may require appropriate notice."  *Hall*, 93 F.3d at 1554 (internal quotations omitted); *accord Aukerman*, 960 F.2d at 1039.

Here, Sprint received no communications from Reese for eight years after receipt of the 2005 infringement-allegation letters.  There is no evidence that Sprint had any notice—from Reese or otherwise—that Reese intended to sue it after the close of his other litigation.  Reese's eight-year silence made it reasonable for Sprint

1  to believe that Reese had declined to assert his rights against Sprint. Where there is
2  prior contact between the plaintiff and the accused infringer—especially when the
3  contact is in the form of an infringement accusation—notice becomes essential to a
4  finding of excusable delay. A clear indication that the plaintiff intends to enforce its
5  rights against the alleged infringer after the conclusion of the other litigation allows
6  the accused infringer an opportunity to take steps to protect itself from liability.
7  *Accord Odetics, Inc. v. Storage Tech. Corp.*, 919 F. Supp. 911 (E.D. Va. 1996). Here,
8  Sprint had no such opportunity.

9       The equivocal nature of Reese's contact with Sprint failed to give adequate
10  notice that it may be subject to suit in the future. The equities dictate that notice of
11  intent to pursue infringement claims against Sprint at the conclusion of Reese's other
12  litigation was required in this case. Accordingly, Reese's choice to strategically
13  pursue other lawsuits while ignoring Sprint is legally insufficient to overcome the
14  presumption of unreasonable delay.

15      Second, Reese argues that his delay in bringing suit was reasonable because of
16  the serious health problems he experienced from 2000 to 2008. He argues that his
17  ability to sue Sprint was significantly restricted because of his frequent dialysis
18  treatments and eventual kidney transplant.

19      Generally, illness is not recognized as an adequate excuse for a plaintiff's delay
20  in bringing suit. And although Reese certainly was afflicted with a debilitating illness,
21  Reese's assertion that his delay was necessary because of his failing health is directly
22  contradicted by his previous excuse—his extensive involvement in other litigation.
23  Notwithstanding his poor health, Reese was able to file multiple suits against other
24  infringers during his illness and litigate them to conclusion. (Reese Decl. ¶¶ 17–33.)
25  The fact that Reese was able to competently litigate several other lawsuits undermines
26  his contention that he was physically unable to pursue lawsuits against Sprint.
27  / / /
28  / / /

8

1    Moreover, Reese ignores the five years that have passed since his kidney
2    transplant.  Even after his health issues ended in 2008, Reese did and said nothing
3    until he filed suit in 2013.  Reese does not assert that his health issues continued after
4    2008.  Thus, at a minimum Reese had three years after the resolution of his health
5    issues before laches would be presumed.

6    Finally, an inability to find willing counsel, another of Reese's excuses, is
7    widely rejected as a legally cognizable reason to excuse an unreasonable delay in
8    filing suit.  *Hall*, 93 F.3d at 1554.  Additionally, Reese's litigation history shows that
9    he has used multiple counsel at various times, and was fully capable of engaging in
10   different litigation activities with different counsel—or by himself.

11   **C. Prejudice**

12   A plaintiff can also rebut the laches presumption by raising a genuine fact issue
13   regarding the absence of prejudice to the defendant.  *Aukerman*, 960 F.2d 1030.  Reese
14   contends that his delay did not materially prejudice Sprint.  But Reese attempts to
15   prove this lack of prejudice by asserting that *Sprint* has failed to demonstrate that it
16   has been prejudiced by Reese's delay—thus placing the burden of production on
17   Sprint.  This is incorrect; the *Auckerman* presumption places the burden of production
18   on the plaintiff.  *Hall*, 93 F.3d at 1553.  Thus it is Reese's burden to come forward
19   with affirmative evidence of a lack of prejudice.  Sprint may remain "utterly mute on
20   the issue of prejudice and nonetheless prevail[]."  *Hall*, 93 F.3d at 1554.

21   Reese has provided no affirmative evidence that Sprint will not suffer prejudice
22   from his eight-year delay.  Reese merely attacks Sprint's assertions of prejudice as
23   "largely conclusory and lack[ing] any proof."  (Opp'n 15.)  This is insufficient—the
24   burden lies with Reese, not Sprint.  Accordingly, Reese has failed to adduce any
25   affirmative evidence that Sprint has not suffered evidentiary and economic prejudice
26   by Reese's eight-year delay in filing suit.

27   / / /
28   / / /

**V.    CONCLUSION**

Based on the undisputed facts, Sprint is entitled to the presumption of laches. Reese has failed to prove that his delay was reasonable, or that Sprint suffered no prejudice as a result of the delay.  Accordingly, for the reasons discussed above, Sprint's Motion for Summary Judgment is **GRANTED**.  (ECF No. 53.)  A Judgment will issue.  The parties are directed to file a joint status report detailing what issues, if any, remain for this Court to resolve.

**IT IS SO ORDERED.**

May 9, 2014

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**