# United States District Court
# Central District of California

| | |
|---|---|
| MORRIS REESE, | Case No. CV13-03811-ODW (PLAx) |
| Plaintiff, | **ORDER GRANTING** |
| v. | **DEFENDANTS' MOTION FOR** |
| | **SUMMARY JUDGMENT [131]** |
| SPRINT NEXTEL CORP., | |
| | **ALL CASES** |
| Defendant. | |
| | Judge: Hon. Otis D. Wright II |
| MORRIS REESE, | |
| | Case No. CV13-05196-ODW (PLAx) |
| Plaintiff and Counter-defendant, | |
| v. | |
| | **ALL CASES** |
| TRACFONE WIRELESS, INC., | |
| | Judge: Hon. Otis D. Wright II |
| Defendant and Counterclaimant. | |

| | |
|---|---|
| MORRIS REESE, | Case No. CV13-05197-ODW (PLAx) |
| Plaintiff and Counter-defendant, | |
| v. | |
| | **ALL CASES** |
| VERIZON WIRELESS SERVS LLC, | |
| Defendant and Counterclaimant. | Judge: Hon. Otis D. Wright II |
| MORRIS REESE, | |
| | Case No. CV13-05198-ODW (PLAx) |
| Plaintiff and Counter-defendant, | |
| v. | **ALL CASES** |
| AT&T MOBILITY II LLC, | Judge: Hon. Otis D. Wright II |
| Defendant and Counterclaimant. | |
| MORRIS REESE, | |
| | Case No. CV13-05199-ODW (PLAx) |
| Plaintiff, | |
| v. | **ALL CASES** |
| T-MOBILE USA, | Judge: Hon. Otis D. Wright II |
| Defendant. | |

# I.   INTRODUCTION

Before the Court is Defendants Sprint Nextel Corporation, TracFone Wireless, Inc., Verizon Wireless Services, LLC, AT&T Mobility II LLC, and T-Mobile USA, Inc.'s Motion for Summary Judgment, filed December 18, 2017.  (Mot., ECF No. 131.)  Plaintiff Morris Reese timely opposed the Motion on January 8, 2018 (Opp'n ECF No. 134), and Defendants replied on January 22, 2018.  (Reply, ECF No. 136.)  For the following reasons, the Court **GRANTS** Defendants' Motion.[1]

# II.   BACKGROUND

## A.   Patent Claims at Issue

Plaintiff filed this action on May 29, 2013, alleging that various cellular wireless companies infringed on his patent, U.S. Patent No. 6,868,150 ("the '150 Patent"), by providing call-waiting and caller-ID services.  (Compl., ECF No. 1.)  On December 18, 2017, Defendants moved for summary judgment, arguing that Claims 23 and 32 of the '150 Patent are invalid under 35 U.S.C. § 101.  The parties agree that there are no disputed issues of material fact at issue in the pending Motion.  (Pl.'s Statement of Genuine Disputes of Material Facts and Conclusions of Law, ECF No. 135-1 ("Plaintiff . . . confirms there are no disputed issues of material fact relevant to Defendants' Motion for Summary Judgment under 35 U.S.C. § 101.).)  Rather, the Motion turns on whether Claims 23 and 32 are patent eligible as a matter of law.

The '150 Patent is titled, "Method for Use with Caller ID System."  (Defs.' Statement of Uncontroverted Facts, Ex. A ("the Patent"), ECF No. 132-1.)  According to Plaintiff, the '150 Patent

> teaches improved methods for using conventional telephone and cellular equipment both for controlling the disclosure of a calling party directory telephone number (or name and number) and for transmitting that information from the switching office serving a party who is making a call to the switching office of a party receiving a call before

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

transmitting or withholding that caller ID information to or
from the called party.

(Opp'n 1.) Plaintiff claims that Defendants infringe Claims 23 and 32 of the '150
Patent.

Claim 23 provides:
A method for indicating to a first party who subscribes to a
Custom Local Area Signaling System (CLASS) service
including Caller Identification (Caller ID) and who is
engaged in a telephone conversation with a second party an
incoming call from a third party calling a telephone number
of the first party comprising the steps of:
(a)    receiving at a terminating central office (TCO) of the
fi[r]st party who subscribes to said CLASS service including
said Caller ID and who is engaged in the telephone
conversation with the second party the third party directory
telephone number (DN) flagged as private from an
originating central office of the third party, indicating that
said DN of the third party is not to be disclosed at the first
party called station; and
(b)    said TCO then sending a call waiting (CW) tone
signal to the first party, said CW tone signal indicates to the
first party the incoming call from the third party.

(The Patent col. 10:15–31.)

Claim 32 provides:
A method for sending a call waiting (CW) tone signal only
to a first party who subscribes to a Custom Local Area
Signaling System (CLASS) service including Caller
Identification (Caller ID) and who is engaged in a telephone
conversation with a second party, comprising the steps of:
(a)    receiving at a terminating central office (TCO) of the
first party who subscribes to said CLASS service including
said Caller ID and who is engaged in the telephone
conversation with the second party a calling third party
directly telephone number (DN) flagged as private from an
originating central office of the calling third party indicating
that said received DN of the calling third party is not to be
disclosed at the first party called station; and

(b)    said TCO then sending said CW tone to the first party.

(*Id.* col. 11:11–26.)

Defendants argue that the two Claims are not materially different for the § 101 analysis.  (*See* Mot. 2.)  Each claim is directed to a method comprising two steps: (a) receiving a private-flagged directory telephone number of a calling party at a "terminating central office"[2]; and (b) the terminating central office then sending a call waiting tone to the called party to notify them of the incoming call from the calling party.  The "notification" takes the form of the well-known call waiting tone signal.

## B.    Parties' Arguments

Defendants argue that Claims 23 and 32 are not patent-eligible under § 101 because they concern the abstract idea of notifying a person engaged in a conversation that a third party would like to speak with them.  (Mot. 1.)  Defendants contend that the Claims fail both steps of the test outlined in *Alice Corp. Pty Ltd. v. CLS Bank International*, 134 S. Ct. 2347 (2014) ("*Alice*"), i.e., the Claims are directed to an unpatentable abstract idea and contain no additional inventive elements in computer or communications technology to make them patent eligible.

Plaintiff argues that his inventions do not simply automate the "basic human activity" of interrupting a conversation to notify one of its participants that a third party would like to speak to one of the call participants; rather, the purpose of Claims 23 and 32 "is to indicate to a subscriber to both call waiting and caller ID, who is already engaged in a call, using an audible tone signal, the existence of an incoming call from a third party whose directory telephone number has been flagged private." (Opp'n 6.)  Plaintiff also argues that Defendants improperly interpret the Claims and asserts that the Court should construe the disputed claims before adjudicating the pending Motion.  (*Id.* at 11.)

---

[2] The patent defines a "terminating central office" as generic "telephone switching office" equipment used by Regional Bell operating Companies to deliver telephone services.  (The Patent, col. 1:48–2:12.)

# III.    LEGAL STANDARD

## A.    Motion for Summary Judgment

Federal Rule of Civil Procedure 56 states that a "court shall grant summary judgment" when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine issue" exists if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the opposing party. *Twentieth Century–Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1329 (9th Cir. 1983). In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. *Anderson*, 477 U.S. at 255.

Under Rule 56, the party moving for summary judgment has the initial burden to show "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *see Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). The burden then shifts to the non-moving party to produce admissible evidence showing a triable issue of fact. *Nissan Fire & Marine Ins.*, 210 F.3d at 1102–03; *see* Fed. R. Civ. P. 56(a). Summary judgment "is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The standard "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issues of material fact." *Anderson*, 477 U.S. at 247–48.

**B.      Test for Patent Eligibility**

Section 101 "specifies four independent categories of inventions or discoveries that are eligible for patent protection: processes, machines, manufactures, and compositions of matter." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). "In choosing such expansive terms . . . Congress plainly contemplated that the patent laws would be given wide scope." *Id.* (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308–09 (1980)). Even so, the Supreme Court has carved out three exceptions to Section 101's "broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'" *Id.* (quoting *Chakrabarty*, 447 U.S. at 309). These exceptions seek to protect concepts that "are part of the storehouse of knowledge of all men" and are "free to all men and reserved exclusively to none." *Id.* (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)).

The Supreme Court has also recognized that "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice*, 134 S. Ct. at 2354 (quoting *Mayo Collaborative Servs. v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1293 (2012) ("*Mayo*")) (ellipses in original). "Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept. Applications of such concepts to a new and useful end . . . remain eligible for patent protection." *Id*. (citations and quotations omitted).

Expanding on its decision in *Mayo*, the Supreme Court in *Alice* established a two-step process for resolving patent eligibility under Section 101. "First, a court must 'determine whether the claims at issue are directed to one of those patent-ineligible concepts.'" *Timeplay, Inc v. Audience Entm't*, No. CV–15–05202–SJO–JCx, 2015 WL 9695321, at *3 (C.D. Cal. Nov. 10, 2015) (quoting *Alice*, 134 S. Ct. at 2355). "If so, then the court must ask '[w]hat else is there in the claims,' which requires consideration of 'the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application.'" *Id.* (quotations omitted). "In

this second step, the court must 'search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Id.* (brackets and quotations omitted).

## IV. DISCUSSION

### A. Timing of Patent Eligibility Inquiry

As a threshold matter, the Court must first determine whether it may consider the question of patent eligibility without a claim construction hearing. "Patent eligibility under [Section] 101 is a question of law that may, in appropriate cases, be decided on the pleadings without the benefit of a claim construction hearing." *Modern Telecom Sys. LLC v. Earthlink, Inc.*, No. SA–CV–14–0347–DOC, 2015 WL 1239992, at *6 (C.D. Cal. Mar. 17, 2015) (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming district court's decision to grant motion to dismiss based on patent-ineligible subject matter under Section 101 without having a claim construction hearing)). Even so, it may be "desirable—and often necessary—to resolve claim construction disputes prior to a [Section] 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. Can. (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012); *but see Content Extraction*, 776 F.3d at 1349 ("Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under [Section] 101.").

Plaintiff argues that the Court should first reject Defendants' proposed interpretation of the claims at issue and construe the disputed claim terms consistently with Reese's proposed constructions. (Opp'n 11.) Plaintiff also acknowledges, however, that a claim construction is not an "inviolable prerequisite to a validity determination." (*Id.* (citing *Content Extraction*, 776 F.3d at 1349).) As described

above, Claims 23 and 32 concern relatively nontechnical concepts of telephone services. These concepts are not so "opaque such that claim construction would be necessary to flush out [their] contours" before determining whether the claims are patent eligible. *EveryMD.com LLC v. Facebook Inc.*, No. CV 16-06473-AB-JEM, 2017 WL 3453294, at *4 (C.D. Cal. May 10, 2017) (quoting *Lumen View Tech. v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189, 205 (S.D.N.Y. 2013)). Therefore, the Court finds that a full claim construction is unnecessary to adjudicate the pending Motion.

**B.  Claims 23 and 32 of the '150 Patent Are Abstract and Fail Under Step One of the *Alice/Mayo* Inquiry**

The first step in the *Alice/Mayo* test is to determine whether the patent claims are "directed to an abstract idea." In evaluating this prong, courts in this district have adopted the approach in *Diamond v. Diehr*, 450 U.S. 175, 185 (1981), and held that the Court should first "identify the purpose of the claim—in other words, what the claimed invention is trying to achieve—and ask whether that purpose is abstract." *Cal. Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F. Supp. 3d 974, 991 (C.D. Cal. 2014). "The *Diehr* majority took the correct approach of asking what the claim was trying to achieve, instead of examining the point of novelty." *Id.* at 991–92. Thus, "courts should recite a claim's purpose at a reasonably high level of generality," using step one of the *Alice/Mayo* test as a "sort of 'quick look' test, the object of which is to identify a risk of preemption and ineligibility." *Id.* Then, "[i]f a claim's purpose is abstract, the court looks with more care at specific claim elements at step two." *Id.*

At step one, "it is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental . . . practice long prevalent in our system . . . .'" *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) (quoting *Alice*, 134 S. Ct. at 2356). In determining whether the claims are directed to an abstract idea, courts "must be careful to avoid simplifying the claims because 'at some level, all inventions . . .

embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2354). "However, not every claim that recites concrete, tangible components escapes the reach of the abstract-idea inquiry." *Id.*

Defendants argue that Claims 23 and 32 are directed to the unpatentable, abstract idea of notifying a person engaged in a call that someone who wants to keep their telephone number private would like to speak with them. (Mot. 9.) They contend that the claims do nothing more than describe an automated version of the following human functions: Bruce calls an operator and asks to speak to Alex. Alex is already engaged in a call with Nate. Bruce instructs the operator to interrupt the call between Alex and Nate to tell Alex that he has a call, but not to disclose Bruce's identity. The operator interrupts the call and informs Alex than an unidentified caller is attempting to call him on his telephone number. (*Id.* at 10–11.) Defendants also argue that the recitation in the Claims to general telecommunications equipment does not convert the abstract idea into something tangible. (*Id.* at 11 (citing *TLI*, 823 F.3d at 612).)

Plaintiff disputes that the purpose of the Claims is abstract. According to Plaintiff, the purpose is "to indicate to a subscriber to both call waiting and caller ID, who is already engaged in a call, using an audible tone signal, the existence of an incoming call from a third party whose directory telephone number has been flagged private."

Even accepting this purpose as stated by Plaintiff, the Court finds it to be directed to an abstract idea. That the claims involve functionality of known telecommunications equipment does not detract from this finding. As the Federal Circuit has clarified, "a relevant inquiry at step one is 'to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.'" *TLI Comm'ns*, 823 F.3d at 611. Claims involving the latter include those that "simply add conventional computer components to well-known business

practices or consist only of generalized steps to be performed on a computer using conventional computer activity." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1260 (Fed. Cir. 2016) (citing *TLI*, 823 F.3d at 612). For example, in *TLI* the Federal Circuit held patents claiming a method of uploading, classifying, and storing digital images were patent-ineligible even though the claims involved tangible components like "a telephone unit" and a "server" because these physical components "merely provided a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner." 823 F.3d at 611. The specification described these components as "having 'the standard features of a telephone unit,' with the addition of a 'digital image pick up unit for recording images,' that 'operates as a digital photo camera of the type which is known.'" *Id.* at 612 (citations to the patent specification omitted). "Likewise, the server [was] described simply in terms of performing generic computer functions such as storing, receiving, and extracting data." *Id.* Thus, the components' functions were "described in vague terms without any meaningful limitations," indicating "the focus of the patentee and of the claims was not on an improved telephone unit or improved server." *Id.* at 613. The Federal Circuit therefore concluded the claims were "not directed to a solution to a 'technological problem'" or to solving "a challenge particular to the Internet," but were instead directed to an abstract idea. *Id.* The Court finds that Claims 23 and 32 simply add conventional telecommunications components to the well-known telephone practice of interrupting a call to let one of the parties know that another person is trying to call them, and are directed to an abstract idea. *See Affinity Labs*, 838 F.3d at 1260.

Plaintiff responds that Defendants' position ignores the limitations of the claims related to "flagging a directory telephone number as private, transmitting that flagged number from an originating office to a terminating office, and sending only an audible call waiting tone signal to the called party in response to receiving the flagged directory telephone number at the terminating central office." (Opp'n 3.) The only

part of this "limitation," however, that actually appears on the face of the Claims is the action of sending an audible call waiting tone. Nowhere do the Claims describe the actual methods for flagging a number as private or transmitting the flagged number from one office to another. (*See* The Patent col. 10:15–34, col. 11:11–26.) Instead, the Claims refer to a third-party call that has already been flagged as private and a terminating central office that "receiv[es]" the notice of the third-party call. (*Id.*) These passive descriptions do not describe the methods for "flagging" or the "receiving."

Based on the language of the Claims themselves and Plaintiff's description of the purpose of the Claims, the Court finds that they are directed to an abstract idea and fail step one of the *Alice*/*Mayo* inquiry.

**C.   Claims 23 and 32 of the '150 Patent Fail to Add an Inventive Concept and Fail Step Two of the *Alice*/*Mayo* Inquiry**

When a claim is directed to an abstract idea, the Court "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334–35 (Fed. Cir. 2016) (quoting *Mayo*, 132 S. Ct. at 1297–98). This inquiry requires a determination whether the patent includes "additional features to ensure that the claim[s] [are] more than a drafting effort designed to monopolize the abstract idea." *Alice*, 134 S. Ct. at 2357. "Those 'additional features' must be more than 'well-understood, routine, conventional activity.'" *Ultramercial, Inc. and Ultramercial, LLC v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (quoting *Mayo*, 132 S. Ct. at 1298).

Plaintiff argues that Claims 23 and 32 contain an inventive concept because they "describe a specific method for providing flagged caller identification information from an originating central office to a terminating central office and, when appropriate, withholding that information from a party already engaged in a call but only if that called party subscribes to specific telephone features." (Opp'n 10–11.)

Considering the language of the Claims themselves, the Court finds that neither claim includes an inventive concept that transforms the nature of the Claims into patentable inventions. As Defendants point out, the Claims do not describe the use of any particular equipment or describe how the tone is transmitted. (Reply 15.) Additionally, the use of telephone units in the Claims is not sufficient to establish an inventive concept. *TLI*, 823 F.3d at 614 (explaining that "the telephone unit is not an inventive concept sufficient to confer patent eligibility"). And as discussed above, the Claims do not describe the actual processes or necessary equipment for (1) subscribing to call waiting or caller ID, (2) flagging the number as private, (3) transmitting the flagged caller's information to the terminating central office, or (4) transmitting the call waiting tone to the party engaged in the call. Therefore, the Court finds that the Claims simply "monopolize the abstract idea" and are not patent eligible. *See Alice*, 134 S. Ct. at 2357.

Thus, Claims 23 and 32 fail step two of the *Alice*/*Mayo* inquiry to be patent-eligible subject matter under § 101. Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment.

///
///
///
///
///
///
///
///
///
///
///
///

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. (ECF No. 131.) The Court **ORDERS** the parties to file a joint status report no later than **April 23, 2018**, detailing what claims, if any, remain for the Court to resolve, including whether adjudication of Defendants AT&T and T-Mobile's pending motions to amend is necessary given the outcome of the Motion for Summary Judgment. If there are no further claims remaining, the parties shall submit a proposed final judgment for the Court's review.

**IT IS SO ORDERED.**

April 9, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**